FILED
2014 Jul-07 PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DORIS JEAN SUMMERVILLE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 7:12-CV-1796-RDP |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Doris Jean Summerville, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and Supplemental Security Income. Summerville timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether the ALJ applied the proper legal standards. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id*. (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.

*Id*.  Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.  *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker*, 646 F.2d. 1075, 1076 (5th Cir. Unit A Jun.1981)).  Therefore, this court reviews de novo the Commissioner's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir.1991).

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that the Commissioner uses to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]
>
> (4) whether the claimant can perform any of his or her past work; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Summerville was not engaged in substantial gainful activity, and found she had the severe impairments of lumbar spine facet arthropothy, lumbar spine degenerative disc disease, obesity, obstructive sleep apnea, and left ventricular hypertrophy. R. 15. The ALJ concluded Summerville did not suffer from a listed impairment. R. 16. The ALJ found Summerville had the residual functional capacity (RFC) "to perform less than a full range of sedentary work." R. 16. Specifically, he found Summerville was restricted as follows:

> [T]he claimant can occasionally lift or carry ten pounds, and can frequently lift or carry items of negligible weight. The claimant can stand and/or walk for two hours with the option to sit/stand every thirty minutes. She can sit for six hours. She can occasionally push and pull with the upper extremities. She can occasionally push and pull with the lower extremities. She can occasionally balance; occasionally stoop; occasionally kneel; occasionally crouch; occasionally crawl; and occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She can occasionally reach overhead, bilaterally. She can frequently reach in other directions, bilaterally. She can frequently handle, bilaterally. She can frequently finger, bilaterally. She can tolerate occasional exposure to extreme heat and cold. She can tolerate occasional exposure to pulmonary irritants. She should avoid all exposure to unprotected heights and dangerous machinery. She will have one unplanned absence per month.

R. 16. With this RFC, the ALJ found Summerville unable to perform her past relevant work. R. 28.

When a claimant is unable to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines ("the grids") to

establish the presence of other jobs at step five.[2] *Foote*, 67 F.3d at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue, or mental illness) also prevents exclusive reliance on the grids. *Id.* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Id*. Based on Summerville's RFC and the testimony of a vocational expert (VE), the ALJ found Summerville could perform other work in the national economy. R. 28-29, 57-59. Therefore, the ALJ found she was not disabled at step five of the sequential evaluation framework. R. 30.

### III. FACTUAL BACKGROUND

Summerville filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on October 23, 2008, and alleges she became disabled on June 1, 2006. R. 13. Summerville was 48 years old at the time of the ALJ's decision. R. 28,30. She has a high school education, and past relevant work as a school bus driver and as a cook. R. 28. She testified she is disabled primarily due to back pain. R. 42. She also testified she has sleep apnea and sometimes gets sleepy during the day. R. 48. She testified that she does not drive long distances, and has to make stops while driving because of back pain and drowsiness. R. 48.

Medical records during the relevant time period show Summerville was seen at Fowler Sports Medicine & Orthopaedics on May 8, 2007, reporting "discomfort in her back radiating into her right leg for a several week period of time." R. 223. Dr. Fowler's physical examination showed tenderness in the paraspinal muscles of the lumbar spine. R. 223. Straight leg raising reproduced

---

[2] The Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

discomfort in her back on the left, with mild radicular symptoms on the right.[3]  R. 223.  A herniated disc was suspected.  R. 223.  Dr. Fowler's plan was to treat Summerville with physical therapy and anti-inflammatory medications.  R. 223.

On June 5, 2007, Dr. Fowler ordered an MRI due to lack of improvement.  R. 222. On June 15, 2007, Dr. Fowler noted the MRI showed Summerville had significant arthritic changes, foraminal narrowing, and nerve root impingement.  R. 221.  Dr. Fowler also  noted that epidural injections and physical therapy had not yielded significant improvement.  R. 221.  She was to be referred for neurosurgical evaluation. 221.

On December 5, 2007, Summerville saw Dr. Bobby Hill complaining of back pain.  R. 280. Physical examination revealed back tenderness, which was increased with pressure applied to the sacroiliac joint.  R. 280.  Straight leg raise testing was negative bilaterally.  R. 280.

When Dr. Hill saw Summerville on March 4 and April 7, 2008, she continued to complain of lower back pain.  R. 279.  On May 12, 2008, physical examination showed tenderness and pain involving the right lower back, associated with positive right straight leg raising at approximately 15 to 20 degrees.  R. 278.  There was also insterscapular tenderness.  R. 278.

Dr. Hill completed a Report of Disability for the Retirement Systems of Alabama on August 5, 2008.  R. 271-72.  He opined Summerville's medical conditions prevented her from performing her duties as a school bus driver.  R. 271.

On September 3, 2008, Summerville saw Dr. Hill complaining of lower back pain with bilateral radiation of pain into the posterior thighs, and into the knee in the left leg.  R. 277.  She was

---

[3]  The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed.  This distinguishes the disorder from disease of the hip joint." *Dorland's Illustrated Medical Dictionary* 1525 (28th Edition).

also having hypogastric pain. R. 277. Physical examination showed tenderness to palpitation over the hypogastrium, as well as in the lumbar spine. R. 277. Range of motion of the spine was limited secondary to pain, and she complained of pain with raising of both lower legs at approximately 25 degrees. R. 277.

On October 9, 2008, Summerville began seeing Dr. Ricky Fennell as her primary care physician. R. 325. She complained of left shoulder pain, and difficulty lifting her shoulder. R. 325. She also complained of lower back pain, bilateral knee pain, and ankle pain. 325. Physical examination revealed moderate tenderness over the midepigastrium, and moderate tenderness over the left acromial bursa.[4] R. 326.

When Summerville returned to Dr. Fennell on October 31, 2008, she reported her shoulder discomfort and midepigastrium pain were better. R. 222. On December 4, 2008, Summerville reported to Dr. Fennell that she was having fairly severe lower back pain, which had begun the previous week. R. 360. She reported that her back pain had been going on for quite some time, and that she had had epidural blocks two times without much improvement. R. 360. Dr. Fennell indicated Summerville would be referred to SpiNet.[5] R. 360.

On February 21, 2009, Summerville had a disability consultative examination by Dr. Raveendran Meleth. R. 330-33. Dr. Meleth's physical examination showed straight leg raising was to 60 degrees while supine, and to 90 degrees while sitting. R. 333. Dr. Meleth noted the exam revealed "no sciatica." R. 333. Dr. Meleth's general findings on examination were knee, low back,

---

[4] The subacromial bursa is "between the acromial process and the capsule of the shoulder joint." *The American Heritage Medical Dictionary*, *available at* http://medical-dictionary.thefreedictionary.com/subacromial+bursa.

[5] There are no treatment notes from SpiNet in the record.

and hip spasms. R. 333. Dr. Meleth diagnosed: 1) low back pain due to moderate degenerative joint disease, with "[n]o sciatica on this examination;" 2) history of neck pain due to cervical spondylosis; 3) moderately overweight; 4) hypertension; and 5) obstructive sleep apnea. R. 333.

On March 12, 2009, Summerville saw Dr. Fennell's nurse practitioner complaining of elevated blood pressure. R. 357. The treatment note states that "she also initially made the appointment for her right leg and hip pain," but that it was "much improved." R. 357. Summerville reported she "had been seen at Spain Rehab, where she was diagnosed with a bulging disk," and that they "recently referred her to a surgeon."[6] R. 357. She was taking Lortab and Flexeril for back pain. R. 357. She reported that her son was deaf and she had to driver him "two hours every morning and pick him up every afternoon to get to his school bus for his school classes." R. 357. The physical examination note states that "she denies any pain at this time." R. 357-58.

On May 14, 2009, Summerville reported to Dr. Fennell that she felt stiff and sore in the morning hours, and had soreness in both hips. R. 354. On July 15, 2009, she presented with a rash on her back and stomach. R. 352.

On November 10, 2009, Summerville reported to Dr. Fennell that she was experiencing upper respiratory symptoms manifested by nasal drainage and congestion. R. 349. Dr. Fennell noted Summerville reported she was "getting along fairly good." R. 349. She also reported that she was seeing a chiropractor for decompression, which seemed to be helping. R. 349. Dr. Fennell counseled Summerville that she needed to work hard getting her weight down, which he thought "would help her back and hip discomfort as well." R. 350.

---

[6] There are no treatment notes from Spain Rehab nor from any referral visit to a surgeon in the record.

When Summerville saw Dr. Fennell's nurse practitioner on February 22, 2010, she reported intermittent headaches and well as sharp chest pains. R. 378. Summerville reported that because she is retired, "she does not have the stress of work, but she does do a lot of driving with her son going to school in Talladega." R. 378. The nurse practitioner found no signs of cardiac cause for her chest pain, and diagnosed acid reflux. R. 378.

In addition to Summerville's back condition, she was diagnosed with obstructive sleep apnea in June 2008. R. 244-46. Sleep clinic records from July and August 2008 show Summerville was prescribed a CPAP machine. R. 265-69. On July 20, 2008, Dr. Narayan Krishnamurthy noted that "[t]he majority of [Summerville's] respiratory events improved on CPAP." R. 268. However, on August 11, 2008, she reported that she remained sleepy and "tends to doze off while driving." R. 265. Her Epworth Sleepiness Scale (ESS) score was 17.[7] R. 265.

On November 17, 2008, Dr. Krishnamurthy noted Summerville had been noncompliant with the use of her CPAP for a few weeks. R. 372. Her ESS score was 15. R. 372. On August 31, 2009, and March 1, 2010, Summerville reported that she was using her CPAP most nights, and her ESS score was 12 on each visit. R. 370-71.

## IV. ISSUES PRESENTED

Summerville raises the following issues on appeal: 1) whether the ALJ erred in relying on the testimony of a medical expert; 2) whether the ALJ erred by failing to consider the plaintiff's impairments in combination; 3) whether the ALJ erred by failing to properly consider her obesity;

---

[7] "The ESS is a self-administered questionnaire with 8 questions. It provides a measure of a person's general level of daytime sleepiness, or their average sleep propensity in daily life. . . . The normal range defined by the 2.5 and 97.5 percentiles is . . . zero to 10." http://epworthsleepinessscale.com/about-epworth-sleepiness/ (visited May 13, 2014).

and 4) whether the ALJ erred is assessing her RFC without a medical source opinion (MSO) from an examining or reviewing physician.

## V. DISCUSSION

### A.

Summerville argues the ALJ erred in giving dispositive weight to the opinion of Dr. Calvin Johns, the medical expert who testified at her hearing. Pl.'s Br. 6. Dr. Johns testified that based on his review of the record, Summerville's impairments would cause "some difficulty in standing and also some difficulty and restrictions in her lifting and carrying." R. 55. He testified that the RFC assessment contained in Exhibit 11F was consistent with the medical treatment records. R. 55. Exhibit 11F contains an RFC assessment completed by a Single Decisionmaker (SDM) who is not a physician. R. 338-45.

An ALJ may "ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s)." *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii). The opinions of a medical expert are evaluated under the same rules used to evaluate other medical opinions. *Id.* Under those rules, to determine how much weight to give to each medical opinion the ALJ must consider several factors, including (1) whether the doctor has examined the claimant; (2) whether the doctor has a treating relationship with the claimant; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c).

In considering the weight to be given to Dr. Johns' testimony, the ALJ noted that Dr. Johns "had an opportunity to observe [Summerville's] testimony, and to review the entire medical

evidence of record." R. 27. He found that Dr. Johns' opinion regarding [Summerville's] functional limitations was "consistent with the medical evidence of record and merits significant weight." R. 27. Therefore, the ALJ considered Dr. Johns' opinion in accordance with the regulations and gave it significant weight because he found it was consistent with the medical evidence of record.

Moreover, contrary to Summerville's assertion, the ALJ did not give dispositive weight to Dr. Johns' opinion as reflected in the RFC contained in Exhibit 11F. The ALJ's RFC finding limited Summerville more than the RFC assessment completed by the SDM. For example, the ALJ's RFC limited Summerville to frequently lifting or carrying items of negligible weight; occasionally pushing and pulling with the upper and lower extremities; and occasionally reaching overhead. R. 16. The ALJ's RFC assessment also provided for a sit/stand option, and included limitations in Summerville's ability to reach, handle, and finger that were more restrictive than the SDM's RFC assessment.

In short, the ALJ assessed Summerville's RFC based upon a thorough review of all evidence in the record, and did not unduly rely on evidence from one source. His RFC findings are in accordance with the requirements set forth in the regulations, which provide that a claimant's RFC will be assessed "based on all of the relevant medical and other evidence," 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and are supported by substantial evidence in the record, including the opinion Dr. Johns.

Summerville also argues the ALJ improperly relied on Dr. Johns' opinions because Dr. Johns "made no distinction between the severe and non severe impairments as determined by the ALJ." Pl.'s Br. 6. Because the ALJ found in Summerville's favor at step two, the specific severe impairments listed in his step two finding are irrelevant. The Eleventh Circuit has held that

11

"[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," provided the ALJ considered the claimant's impairments in combination. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010); *see also Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (noting that a failure to find that claimant's mental impairment was severe was harmless because the ALJ found other severe impairments and considered the impairment in the rest of the decision). However, the ALJ was required to consider all of Summerville's medically determinable impairments, including those that are not severe, when assessing her RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

A review of the ALJ's decision shows that he properly considered Summerville's alleged impairments and provided a rationale for finding some of her impairments severe, while categorizing other impairments as non-severe. R. 15-16. His decision also states that he considered Summerville's nonsevere impairments in assessing her RFC. R. 16 ("I have considered the claimant's allegations regarding these [nonsevere] impairments in assessing her residual functional capacity."). Therefore, the ALJ did not err in his consideration of Summerville's nonsevere impairments.

**B.**

Summerville also asserts that neither the ALJ nor Dr. Johns considered her impairments in combination. Pl.'s Br. 7. When a claimant has several impairments, the Commissioner "has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Contrary to Plaintiff's assertion, Dr. Johns specifically stated that he considered all of her impairments. He testified that from the "totality of her problems here, there would be some difficulty in standing and also some difficulty and restrictions in her lifting and carrying" that were summed up in the RFC contained in Exhibit 11F. R. 55. Therefore, Plaintiff's argument that Dr. Johns did not consider her impairments in combination is without merit.

In addition, a review of the ALJ's decision shows that he was aware of his obligation to consider Summerville's impairments in combination, and that he did so in his consideration of the evidence. The ALJ recognized this obligation in his consideration of whether Summerville had a 'severe' impairment: "I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "'severe.'" R. 14. He also recognized that Summerville's combined impairments must be considered in determining whether she met a Listing. R. 14. He found that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." R. 16. In *Jones* the court held the ALJ's finding that Jones "[did] not have 'an impairment *or combination of impairments* listed in, or medically equal to one [in the Listings]'" was sufficient evidence to show the ALJ had considered the combined effect of Jones' impairments. 941 F.2d at 1533 (emphasis in original). The ALJ also recognized that he "must consider all of the claimant's impairments, including impairments that are 'not severe'" in assessing her RFC. R. 14. He stated that in making his RFC finding, he "considered all symptoms." R. 18.

This is not a case such as *Walker v. Bowen*, where the ALJ did not mention many of the claimant's impairments. 826 F.2d 996, 1001 (11th Cir. 1987) (finding the ALJ did not consider the combination of claimant's impairments before determining her RFC when he made specific

reference to only two impairments and failed to mention five other impairments except to find they did not establish disabling pain). In the present case, there is ample evidence showing the ALJ considered all of Summerville's impairments and their combined impact on her ability to perform work related activities. Therefore, he did not fail to properly consider Summerville's impairments in combination. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding the ALJ considered the claimant's combined impairments because of his lengthy consideration of those conditions and his well articulated findings as to their effect on the claimant).

### C.

Summerville argues the ALJ failed to adequately consider her obesity under Social Security Ruling 02-1p. Pl.'s Br. 9. Social Security Ruling (SSR) 02-01p provides guidance in the evaluation of obesity. It provides that "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment," and that "descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity)" will not establish whether obesity is a "severe" impairment. SSR 02-1p, 2002 WL 34686281, *4 (S.S.A.). Rather, an ALJ must "do an individualized assessment of the impact of obesity on an individual's functioning." *Id*. The Ruling also provides that obesity must be considered in assessing a claimant's RFC by assessing "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at * 6.

Although Summerville cites to Social Security Ruling 02-1p in her brief, she has not pointed to any record evidence showing her obesity prevents her from performing the work related activities as set forth in the ALJ's RFC assessment. The ALJ discussed Summerville's obesity in his decision and found that it was a severe impairment. R. 15. He also discussed the requirements of SSR 02-1p

and stated that he had "considered the impact of [Summerville's] obesity in exacerbating her problems and functional limitations caused by her other impairments." R. 27. Therefore, the ALJ properly applied SSR 02-1p in considering Summerville's obesity.

## D.

Summerville next argues that "[i]n the absence of any medical source opinion (MSO) from any examining or reviewing physician, the ALJ had no medical opinion on which to rely" in assessing her RFC. Pl.'s Br. 9. However, neither the Commissioner's regulations nor the law of this circuit require that an RFC be based upon a medical source statement from a doctor.

The regulations provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

§ 404.1527(d). One example of an opinion that is specifically excluded from the definition of a medical opinion is a claimant's RFC.

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

§ 404.1527(d)(2). Therefore, under the regulations, a claimant's RFC is not a medical opinion, and a doctor's opinion was not required for the ALJ to assess Summerville's RFC.

The Eleventh Circuit has also recognized that determining a claimant's residual functional capacity and ability to work is a task for the ALJ, and not doctors. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished) ("[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). It has

also found an ALJ's RFC finding can be supported by substantial evidence even if there is no medical source statement in the record. In *Green v. Social Security Administration*, the court found the ALJ had properly refused to credit a Physical Capacities Evaluation ("PCE") from the claimant's treating physician. 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished). The court of appeals rejected the claimant's argument that without that PCE, there was nothing in the record upon which the ALJ could base his RFC finding. *Id.* at 923. The court held that other evidence from the claimant's doctors (which did not contain a PCE or RFC assessment) was sufficient to support the ALJ's finding that the claimant could perform light work. *Id.* at 923-24; *see also Langley v. Astrue*, 777 F Supp. 2d. 1250, 1258 (N.D. Ala. 2011) (holding RFC is not a medical opinion and need not be based upon a doctor's RFC opinion).

In the present case, there was sufficient medical (and other) evidence in the record to allow the ALJ to assess Summerville's RFC. This evidence included a medical opinion from Dr. Johns about Summerville's RFC. As discussed above, Dr. Johns testified that based on his review of the record, Summerville's impairments would cause "some difficulty in standing and also some difficulty and restrictions in her lifting and carrying," and that the RFC assessment from the SDM was consistent with the medical treatment records. R. 55. The record also contains extensive treatment records and a consultative examination providing medical evidence about Summerville's impairments. This evidence was sufficient to allow the ALJ to assess Summerville's RFC as contemplated by the regulations.

Summerville also suggests the ALJ erred because "[i]n the absence of any medical source opinion . . . the ALJ had . . . no RFC in the specific format required to address each area of functioning under SSR 96-8p." Pl.'s Br. 9. Social Security Ruling 96-8p explains that the ALJ must

initially assess a claimant's physical and mental capacities on a function-by-function basis, rather than in terms of exertional categories such as "sedentary" or "light." SSR 96-8p, 1996 WL 374184, *3 (S.S.A.). However, the Ruling does not require ALJ to base his RFC finding on a medical source opinion, although such opinions will be considered if present. The Ruling reiterates that "RFC is an administrative assessment," which "is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'–*i.e.*, opinions about what the individual can still do despite his or her impairment(s)–submitted by an individual's treating source or other acceptable medical sources." *Id.* at *2. Therefore, SSR 96-8p does not require the ALJ to base his RFC finding on a medical source opinion addressing Summerville's capacities on a function-by-function basis.

In addition, a review of the ALJ's RFC finding shows that he addressed Summerville's physical capacities on a function-by-function basis in compliance with SSR 96-8p. The ALJ made independent findings as to Summerville's ability to lift; carry; sit; stand; walk; push; pull; balance; stoop; kneel; crouch; crawl; climb ramps, stairs, ladders, ropes and scaffolds; reach overhead and in other directions; handle; finger; tolerate exposure to extreme heat and cold; tolerate pulmonary irritants; and be exposed to unprotected heights and dangerous machinery. R. 16. This satisfies the requirements of SSR 96-8p, and no medical source opinion was required.

## VI. CONCLUSION

The court concludes the ALJ's determination that Summerville is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this

decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

      **DONE** and **ORDERED** this    7th    day of July, 2014.

                                                **R. DAVID PROCTOR**
                                                UNITED STATES DISTRICT JUDGE